# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### JANUARY SESSION, 1997

FILED

June 4, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 03C01-9602-CR-00084 |
| Appellee, | ) | |
| | ) | KNOX COUNTY |
| | ) | |
| v. | ) | HON. RICHARD BAUMGARTNER, |
| | ) | JUDGE |
| MICHAEL D. FRAZIER, | ) | |
| | ) | (Attempt to commit voluntary |
| Appellant. | ) | manslaughter) |

FOR THE APPELLANT:

GREGORY P. ISAACS
1 Centre Square
Second Floor
Knoxville, TN 37902

RONALD A. RAYSON
1 Centre Square
Second Floor
Knoxville, TN 37902

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TIMOTHY F. BEHAN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

RANDALL E. NICHOLS
District Attorney General

WILLIAM H. CRABTREE
Assistant District Attorney
City-County Building
Knoxville, TN 37902

SALLY JO HELM
Assistant District Attorney
City-County Building
Knoxville, TN 37902

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT, JUDGE

# OPINION

The appellant, Michael Frazier, appeals from the sentencing judgment of the Criminal Court of Knox County. He was tried for attempt to commit murder in the first degree and was convicted of attempt to commit voluntary manslaughter, a Class D felony. The appellant received a sentence of four years as a standard (Range I) offender. On appeal the following issues are raised: (1) sentencing at the maximum time within the range and (2) the denial of probation.

For reasons explained below, the judgment of the trial court is affirmed.

The appellant was tried before a jury for the attempted first-degree murder of Robert Whedbee. The appellant testified he was in love with Whedbee's wife, Lisa Whedbee, and fearing she was being brutalized by her husband, he entered the Whedbee home in the early evening hours of June 7, 1994, planning to kill Robert Whedbee. Armed with a knife, he hid within a closet for several hours. In the early hours of June 8, with knife in hand he entered the room where Mr. Whedbee slept. Mr. Whedbee awoke, and a scuffle ensued. The defendant testified that before he began any assault he decided to abandon the plan and retreat from the house. He testified that Robert Whedbee awoke as the appellant was leaving the bedroom. Mr. Whedbee, however, testified he awoke and found the appellant standing over him, making a downward motion. The struggle resulted, according to Mr. Whedbee, when he tried to fend off the blow and subdue the attacker. Mr. Whedbee received very minor wounds to his ear and throat and a more serious cut on his thumb. This latter injury occurred when Mr. Whedbee grabbed the knife during the struggle. The appellant was acquitted of attempt to commit murder in both the first and second degrees but was convicted of attempt to commit voluntary manslaughter.

At the sentencing hearing, the appellant requested probation and minimal sentencing, citing his lack of criminal record and his state of mental despair at the time of the offense. Dr. Diana McCoy, a clinical psychologist, testified for the defense that violence was out of character for the appellant, that he was depressed, and that at the time of the offense, his mental state was impaired due to his anxiety over the safety of Lisa Whedbee. In her opinion incarceration was inappropriate for the appellant. She further stated, however, that the appellant went to the Whedbee home "for the purpose of killing Rob Whedbee. That was his point in going there at that time." She stated that later he realized he couldn't go through with the crime and intended to withdraw. The appellant did not testify at the sentencing hearing. The presentence report reflects the appellant has no prior criminal record. The trial court set the sentence at four years, the maximum in the range, and denied the appellant's request for probation.

## I. Standard of Review

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W. 2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm

3

the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigation factors; (6) any statement the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210(b) (Supp. 1996); Tenn. Code Ann. § 40-35-103(5) (1990); State v. Holland, 860 S.W. 2d 53, 60 (Tenn. Crim. App. 1993).

In Ashby, our supreme court said:

> ?[A] case-by-case approach to sentencing underlies this Act as a fundamental policy. An individual criminal is sentenced based on the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background .... Any case-by-case approach will embody discretion, since all of the appropriate factors and circumstances must be weighed and considered as a whole for the disposition of each case."[1]

State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991) (quoting State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986)).

---

[1] While Moss was decided under the 1982 sentencing law, the court in Ashby commented upon the Tennessee Criminal Sentencing Reform Act of 1989 that is controlling in the case now before us.

## II. **Length of Sentence.**

The record affirmatively reflects that the trial court considered the elements enumerated in <u>Ashby</u> and in the above-cited statutes. Accordingly, our review is accompanied by the presumption of correctness. Given this presumption there is ample support in the record for the trial court's determination of the sentence.

The trial judge considered the evidence presented at trial and said he had a "very clear recollection of the facts of this case." After hearing testimony at the sentencing hearing, the trial court referred to his consideration of the presentence report and admitted it into evidence. After hearing arguments concerning enhancement and mitigation factors, the court recessed for a brief interval to reflect upon the sentencing determination, and then the trial judge announced he had considered the evidence at trial, the evidence presented at the sentencing hearing, the presentence report, the arguments of counsel, and the principles of sentencing. The court added, "[A]s always, again, the nature and character of the criminal conduct involved in the particular case are a major factor for the court's consideration." The court cited the necessity of appropriateness of the sentence in view of the "nature of the defendant and his background history, and conduct during this particular incident." The court acknowledged the appellant had no prior felony convictions but reflected that the jury verdict was in his view "kind" to the appellant, giving him "the benefit of the doubt in this case" in finding him guilty "of the least offensive criminal conduct of which they were given a choice." The trial judge expressed his view that there was sufficient proof to support a finding of an attempt to commit first or second-degree murder.

The court stated, "[W]e start with presumptive minimum sentencing" and then reviewed the enhancement factors set forth in Tennessee Code Annotated Section 40-35-114, determining that factors (2), (4), (5), (7) and (16) did

5

not apply. The court found factor (9), the use of a deadly weapon, and factor (12), a willful infliction of bodily injury, were the only applicable enhancement factors. As to mitigating factors under Tennessee Code Annotated Section 40-35-113, the court found the presence of factor (8), a mental condition that reduced the defendant's culpability, and rejected factors (2), (3), (11) and (12).

## (a) Enhancement factors selected.

The court applied two enhancement factors in its sentencing determination. The factors the court found applicable are:

> (9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense; [and]
>
> (12) During the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to a victim or person other than the intended victim[.]

Tenn. Code Ann. § 40-35-114 (9), (12) (Supp. 1996). The application of factor (9) was conceded by the appellant and is supported without contradiction in the record. The application of factor (12) is likewise supported by the record. Factor (12) is appropriate where the defendant has either willfully inflicted bodily injury or the defendant's actions have resulted in serious bodily injury (or death). Although the injury to Mr. Whedbee's thumb may not have been willfully inflicted, the court found the wound to the victim's ear and the scratch wound to his neck to be willfully inflicted bodily injuries. The court correctly applied enhancement factors (9) and (12).

## (b) Mitigating factors rejected.

The court declined to apply the following mitigating factors:

(2) The defendant acted under strong provocation;

(3) Substantial grounds exist tending to excuse the defendant's

6

criminal conduct, though failing to establish a defense;

(11) The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct; [and]

(12) The defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime [.]

Tenn. Code Ann. § 40-35-113 (2), (3), (11), (12) (1990).

Factors (2) and (3). In rejecting these factors, the trial court referred to the jury's decision to acquit the appellant of attempt to commit murder and convict him only of attempt to commit voluntary manslaughter. It found the jury relied upon provocation to reduce the grade of the offense and found that the appellant had already received the benefit of a finding of provocation through the jury's verdict.

This court reviewed a similar situation in State v. McKinzie Monroe Black, No. 01C01-9401-CC-00006 (Tenn. Crim. App., Nashville, July 14, 1995), in which the trial court cited the jury's application of "strong provocation" to reduce the offense from murder to voluntary manslaughter, finding it "inappropriate that the same factor be used as a mitigating factor." Slip op. at 7-8. This court observed that, although "essential elements of the offense" cannot also serve as enhancement factors, there is no prohibition against "double mitigation," and it is permissible to use provocation as a mitigator in appropriate voluntary manslaughter cases.[2] We need not assess the propriety of the trial court's rationale in the case before us, however, because the record does not support the use of provocation as a mitigation consideration. The appellant secreted himself in the victim's house for several hours before the attack. He had ample opportunity to reflect in solitude about the actions he would take. There were no intervening stimuli that caused or renewed the provocation, and the appellant approached his selected victim, not

---

[2] In McKinzie Monroe Black, we found the circumstances were not appropriate to require the trial court to apply "double mitigation."

while the latter was engaged in any menacing conduct, but while he was asleep. On these facts, provocation did not exist, and the trial court correctly rejected mitigating factors (2) and (3).

Factor (11). In rejecting this factor, the trial court relied upon the proof at trial which showed the appellant prepared for his assault upon the victim by obtaining a weapon, buying surgical gloves, then going to the victim's home around five o'clock p.m. to lie in wait, and significantly, that he laid in wait for approximately seven hours until the intended victim was asleep. Pointing out that the jury's verdict necessarily repudiates the defense of renunciation of the crime, the trial judge stated he was "satisfied that the jury was convinced, as am I, that when Mr. Frazier entered the bedroom his intent was to kill Mr. Whedbee, and that he -- he followed through with that intent until he was stopped by Mr. Whedbee in this matter." The trial court was justified in finding these facts demonstrated a sustained intent to violate the law.

Factor (12). The record supports the trial court's conclusion that there was no proof to support the use of this mitigation factor. The court noted that according to appellant's testimony at trial Lisa Whedbee did not dominate him nor cause him to attack Mr. Whedbee.

(c) Weight of the factors.

The court again referred to the presumptive sentence and observed that the enhancing factors "far outweigh" the mitigating factor. The appellant, however, cites the following comment made by the trial judge:

> Anytime an individual attempts to take the life of another person and engages in that type of conduct, uses a deadly weapon to commit that offense, it is clear in my mind that those factors outweigh the fact that he -- that he has some emotional or mental problem at that particular point in time.

8

The appellant asserts the first clause in the passage evinces arbitrariness such that the court below has "failed to adhere to the principles of presumed minimum sentencing as required." We do not agree. The trial judge's language as cited is contextually insignificant. A fair reading of the record demonstrates the court embarked upon a particularized evaluation process and endeavored to take the "case-by-case" approach authorized by the supreme court.

Accordingly, the appellant has failed to rebut the presumption of the correctness of the trial court's determination of the sentence.

### III. Probation.

In determining the manner of service of the sentence, the court referred to the sentencing purposes and considerations, and after acknowledging the appellant was eligible for alternative sentencing, the court stated:

> Now, when you deal with homicide there's another factor clearly established in the case law. And that is that when the death of an individual is involved or in this case the attempted homicide of an individual is involved, that presumption of probation is removed. And, indeed, it is the overwhelming obligation in that case for the defendant to convince the court that, in fact, probation should be imposed as opposed to incarceration.
>
> It's always this court's objective and the sentencing guidelines objective to treat defendants fairly and justly and equally. And I attempt to do that throughout any time I serve up here on the bench.

The appellant is clearly eligible for alternative sentencing in general, Tenn. Code Ann. § 40-35-102(5), (6) (Supp. 1996), and he is eligible for probation as a particular alternative to confinement. Tenn. Code Ann. § 40-35-303(a) (Supp. 1996). Moreover, he is presumed to be a favorable candidate for alternative sentencing, Tenn. Code Ann. § 40-35-102(6) (Supp. 1996), and the trial court is required to automatically consider probation as a "part of its sentencing determination at the conclusion of the sentencing hearing." § 40-35-303(b). The

9

presumption of suitability for alternatives to confinement may be overcome by evidence to the contrary, Tenn. Code Ann. § 40-35-102(6) (Supp. 1996), and furthermore, the appellant has the burden of establishing suitability for probation. § 40-35-303(b) (Supp. 1996).

Our analysis includes the considerations enumerated in Tennessee Code Annotated Sections 40-35-210(b) and 103(5). One of these considerations is the "nature and characteristics of the criminal conduct involved." Tenn. Code Ann. § 40-35-210(b)(4) (Supp. 1996). Ashby, 823 S.W.2d at 169. In addition we utilize the considerations for ordering confinement that appear in Code Section 40-35-103(1). The only one of these which was cited by the trial court is found in Section 103(1)(B): "Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses." Tenn. Code Ann. § 40-35-103(1)(B) (1990). Of course, as noted above, the trial court referred also to the "nature and character of the criminal conduct involved."

(a) Deterrence.

The trial court based its denial of probation in part upon the deterrence clause of Section 103(1)(B). This consideration is not operative where, as here, no evidence was presented to support the need for deterrence. State v. Davis, 940 S.W.2d 559, (Tenn. 1997); State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App.), perm. app. denied (1991). Therefore, the denial of probation based on deterrence is not justified.

(b) Confinement necessary to avoid depreciating
the seriousness of the offense.

With the elimination of deterrence as a basis for denying probation,

10

the first clause of Section 103(1)(B) stands as the only other basis used by the trial court for denying probation. After reviewing the record, we find no other basis and conclude that, if the trial court's denial of probation is to be sustained, it must rest solely upon the determination that confinement was necessary to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1)(B).

In Tennessee there is a well-recognized nexus between the "nature and characteristics" of the offense and sentencing to avoid depreciating the seriousness of the offense. The nature and characteristics, or circumstances, of the offense have long been recognized as grounds for denying probation. Stiller v. State, 516 S.W.2d 617, 621 (Tenn. 1974); Powers v. State, 577 S.W.2d 684, 685-86 (Tenn. Crim. App. 1978); Mattino v. State, 539 S.W.2d 824, 828 (Tenn. Crim. App. 1976). The courts have used this rationale for denying probation often in cases of homicide or in other cases in which the offense was violent. See Kilgore v. State, 588 S.W.2d 567 (Tenn. Crim. App. 1979). See also Powers, 577 S.W.2d at 685-86; Mattino, 539 S.W.2d at 828. However, our supreme court established a rule whereby the nature and circumstances of the offense could justify a denial of probation in cases not necessarily involving homicides or violent acts. This rule provides that the nature and circumstances of the offense may serve as the sole basis for denying probation when they are "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree; and it would have to be clear that, therefore, the nature of the offense, as committed, outweighed all other factors... which might be favorable to a grant of probation. "State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981). See also State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985). Significantly, "[t]his standard has essentially been codified in the first part of T.C.A. Section 40-35-103(1)(B) which provides for confinement if it 'is necessary to avoid depreciating the seriousness of the offense.'" State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App.), perm. app. denied (Tenn. 1991). Thus, in a proper case, probation may be denied solely on the basis of Code Section 40-35-210(b)(4) (when the nature and characteristics of the offense

11

outweigh all factors that support probation) or under Section 103(1)(B) (when they justify confinement to avoid depreciating the seriousness of the offense), provided that, under either approach, one of the Travis qualifiers is present.[3]

Since the trial court is required to consider the evidence adduced at trial, Tenn. Code Ann. § 40-35-211(b)(1) (Supp. 1996), the court's determination that the jury acted with exceptional leniency is a reasonable influence upon the court in making its finding that confinement is necessary under Section 103(1)(B). See State v. Fredrick Dona Black, No. 03C01-9404-CR-00139, slip op. at 3-4 (Tenn. Crim. App., Knoxville, April 6, 1995). See also State v. Nealy Walter Perry, No. 89-133-III, slip op. at 4-5 (Tenn. Crim. App., Nashville, August 29, 1990), perm. app. denied (Tenn. 1990), Dwyer J., concurring and dissenting. Although the trial court did not expressly mention the Travis qualifiers in the case now before us, the basis for applying one or more of these qualifiers appears in the record. We may look to the record to see if it sufficiently reflects the apparent reasons for the lower court's action so as to allow for meaningful appellate review. State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). See also Johnny Eugene Johnson v. State, No. 01C01-9508-CC-00247 (Tenn. Crim. App., Nashville, October 10, 1996), perm. app. denied (Tenn. 1997). The record in this case demonstrates a basis for concluding that the nature of the offense, as committed, is especially reprehensible or offensive. Assuming, arguendo, as appellant contends, the circumstances are not especially violent, horrifying, or shocking, the circumstances are nevertheless grave enough to support a finding that they are especially reprehensible and/or offensive.

The appellant asserts that the trial court acted arbitrarily in denying probation merely because this is a case in which homicide was attempted. The trial

---

[3]
      The Travis qualifiers are stated in the disjunctive, and evidence that only one applies is sufficient to support denial of probation based upon the nature and circumstances of the offense. See State v. Kyte, 874 S.W.2d 631, 633 (Tenn. Crim. App.), perm. app. denied (Tenn. 1993).

court commented that it is "clearly established in the case law" that in homicide cases the presumption of probation is inappropriate. Although it has been held that "exceptional circumstances must be shown in order to support probation in a case involving the death of another person," Kilgore v. State, 588 S.W.2d 567, 568 (Tenn. Crim. App.), perm. app. denied (Tenn. 1979), the legislature has altered the rule for offenses, such as the one now before us, in which probation is available. "[R]eliance upon the mere fact that a violent crime was committed in order to deny probation is ordinarily insufficient to justify total denial of probation." State v. Howard Martin Adams, No. 03C01-9403-CR-00123, slip op. at 18 (Tenn. Crim. App., Knoxville, January 11, 1995). Indeed, "when the legislature provides probation eligibility for an inherently violent offense, the mere fact that the offense was committed is an insufficient basis to deny probation." Id. See also Travis, 622 S.W.2d at 533-34; Hartley, 818 S.W.2d at 374. Therefore, if the trial judge denied probation merely because this probation-eligible offense was committed, the denial of probation for such reason alone would be unjustified.

In view of the record as a whole, however, we find this locution of the trial court, if imprecise, to be again contextually insignificant. The court expressly grounded the denial of probation in the evidence and the statutory considerations and principles of sentencing, focusing upon the need to avoid depreciating the seriousness of the offense. He expressly referred to the nature and characteristics of the offense and found this consideration to far outweigh the factors favoring probation. The basis for this determination is apparent in the record in that the nature of the offense committed is at least especially reprehensible and/or offensive.

Alternative sentencing issues must be determined by the facts and circumstances of the individual case. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986). If the trial court has considered the relevant facts and the findings are adequately supported in the record, the trial court has the discretion to resolve these

13

issues, bottoming the case upon its own facts.  <u>State v. Taylor</u>, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).  <u>See Ashby</u>, 823 S.W.2d at 168; <u>Fletcher</u>, 805 S.W.2d at 789.

We hold (1) the presumption of correctness attends this aspect of the sentencing determination, and (2) the appellant has failed to overcome it. Moreover, were we to strip away the presumption of correctness because of the challenged phrasing, we would nevertheless find support for a <u>de novo</u> determination that the circumstances are especially reprehensible and/or offensive, such that confinement is necessary to avoid depreciating the seriousness of the offense, thereby arriving at the same result reached by the trial court.

## IV.  Conclusion.

The appellant has failed to overcome the presumption of correctness of the trial court's judgment that (1) the sentence shall be set at four years and (2) the request for probation is denied.  Therefore, the judgment is affirmed.


_____
Curwood Witt, Judge


CONCUR:



_____
Gary R. Wade, Judge



_____
Joseph M. Tipton, Judge


14